

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| P. Michael Cunningham<br>Assistant United States Attorney<br>michael.cunningham@usdoj.gov | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | Direct: 410-209-4884<br>Main: 410-209-4800<br>Fax: 410-962-3091 |

[FILED stamp: U.S. DISTRICT COURT DISTRICT OF MARYLAND 2018 OCT 29 PM 4:37 CLERK'S OFFICE AT BALTIMORE BY _____ DEPUTY]

October 9, 2018

Shari Silver Derrow, Esquire
Office of the Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201

Re: *United States v. Kenyon Spence, et al.,*
Criminal Number: ELH-18-0219

Dear Ms. Derrow:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Kenyon Spence (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by October 23, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to waive indictment and plead guilty to an one-count Information that will charge him with Conspiracy to Engage in Sex Trafficking of a Minor, in violation of 18 U.S.C. §§ 1594(c) and 1591(a). The Defendant admits that he is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

    a. The Defendant conspired with one or more other persons to knowingly recruit, entice, harbor, transport, provide or obtain a person that the defendant knew was less than eighteen years old;

  b. The Defendant knew that the person would be caused to engage in a commercial sex act; and

  c. The recruiting, enticing, harboring, transporting, providing, or obtaining was done in or affecting interstate commerce.

## Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1594(c) | NA | life | life | $250,000 | $100 |

  a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

  c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

  d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

  e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

  f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant

agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charge will be filed by the United States Attorney without the Grand Jury.

    b. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    e. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    f. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to

appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

       h.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

       i.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein, and to the following United States Sentencing Guidelines ("U.S.S.G.").

       a.     Because there are two sex trafficking victims, there are two separate groups pursuant to the Multiple Count Rules contained in U.S.S.G. Chapter 3, Part D. Both groups have the same guideline calculations set forth below.

       b.     The underlying unlawful activity is sex trafficking of a minor in violation of 18 U.S.C. § 1591(a), for which the base offense level is **30** pursuant to §§ 2G1.3(a)(2).

    c.    Pursuant to U.S.S.G. § 2G1.3(b)(2), there is a two **(2)** level increase because a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct.

    d.    Pursuant to U.S.S.G. § 2G1.3(b)(3), there is a two **(2)** level increase because the offense involved the use of a computer or interactive computer service.

    e.    Pursuant to U.S.S.G. § 2G1.3(b)(4), there is a two **(2)** level increase because the offense involved the commission of a sex act or sexual contact.

    f.    Pursuant to U.S.S.G. § 3D1.4, each group counts as one unit warranting a 2 level increase. The adjusted offense level is **38**.

    g.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    h.    The final adjusted offense level is thirty-five **(35)**.

7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Rule 11 (c) (1) (C) Plea</u>

9.    The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence between **60 and 120 months of imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any

lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Restitution

10. The Defendant agrees that for purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, *[handwritten: to the extent that such a challenge can be legally waived.]*

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or

*[handwritten in margin: to the extent that such a challenge can be legally waived,]*

condition of supervised release), except as follows the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Defendant's Conduct Prior to Sentencing and Breach

12. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

13. The Court is not a party to this Agreement, however, if the Court accepts the plea pursuant to Fed. R. Crim. P. 11(c)(1)(C), as stated in paragraph 9, above, it will be bound in accordance therewith.

### Entire Agreement

14. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

> Very truly yours,
>
> Robert K. Hur
> United States Attorney
>
> By: _____
> P. Michael Cunningham
> Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/22/2018
Date

_____
Kenyon L. Spence

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10/22/2018
Date

_____
Shari Derrow, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Kenyon Laquan Spence, the defendant (hereinafter, Spence), is 39 years-old and a resident of New Jersey. In October 2017, he was associated with co-defendant Ruqayah Thompson in conducting prostitution activities in Maryland, New Jersey and elsewhere. Spence and Thompson had previously been arrested and/or convicted for prostitution related offenses.

On or about October 27, 2017, Spence and Thompson were engaged in commercial sex activities at a Ramada Inn located at 1721 Reisterstown Road, Pikesville, Maryland. Both of them had travelled from New Jersey in a car that had been rented by and in the name of Thompson; they brought three other people with them from New Jersey, including Minor Female 1 (a then 17 year-old) and Minor Female 2 (a then 15 year-old). Their specific purpose for traveling to Maryland was to engage in commercial sex at the Ramada Inn, conduct they previously had engaged in at that same location.

Sometime on or before October 25, 2017, Minor Female 2 got into an argument with her mother and left her home. She contacted Minor Female 1, who she identified as her cousin, and asked to stay with her. Soon thereafter, Minor Female 1's mother made both of the girls leave the house, as a result of which Minor Female 1 contacted Thompson, who she had met a party several months before. The girls met up with Thompson at a hotel in Elizabeth, NJ. On or about October 25, 2017, Spence drove Thompson, Minor Females 1 and 2, as well an unidentified adult female known only as "Destiny," from New Jersey to Pikesville, Maryland in a rental car that Thompson had acquired. Thompson rented several rooms in the Ramada Inn for them to stay in for several nights while she and Destiny engaged in commercial sex acts with customers. Spence and Thompson had posted advertisements on Backpage soliciting customers for commercial sex with Thompson or Destiny. Minor Females 1 and 2 initially thought they were accompanying Thompson into New York City for purposes other than to engage in commercial sex acts.

Initially, Minor Females 1 and 2 stayed in Room 228 while Thompson, Spence and Destiny stayed in Room 205. On October 26, 2017, the minor females moved to Room 201, which Thompson also rented for them, although the girls denied knowing the reason for this move. Minor Female 1 told law enforcement officers that while she was still in Room 228, Thompson called her and told her a prostitution customer was at the hotel to see her. A man came to Room 228 and asked Minor Female 1 is she was going to do anything with him; when she said she would not engage in sex with him, the man left.

Thompson contacted Minor Female 1 again and told her another customer was coming to see her. A male knocked on the door to Room 228 and Minor Female 1 let him in. The male

1

Rev. May 2018

asked for a "short stay," that is a commercial sex act of limited duration. The man said he wanted to have sexual intercourse with her. Minor Female 1 told him she did not want to have sex with him. Instead, they agreed he would pay her $100 if he could look at her naked body while he masturbated. The male then masturbated to the point of ejaculation and left the room. Minor Female 1 put the $100 away in the room.

A third customer knocked on Minor Female 1's door and asked her to give him oral sex for $60. Minor Female 1 then gave the male oral sex without a condom. Minor Female 1 stated that the male's penis did not go near her vagina. The male ejaculated while in the room and then he left. During the "date," Minor Female 2 was sitting in the hotel bathroom. In the middle of the date, Minor Female 2 came out of the bathroom and observed Minor Female 1 and the man engaging in oral sex.

After the three customers came to her room, Minor Female 1 gave Thompson the $160 she collected because Minor Female 1 was told Thompson had to pay for the room for the next night. The next day, Thompson and Destiny arranged a "date" for Minor Female 1. Thompson, Destiny, and Minor Female 2 were sitting in the rental car in the hotel parking lot with Spence. Destiny and Thompson encouraged Minor Female 2 to see the next prostitution customer. Spence, Thompson and Destiny instructed Minor Female 2 what she would need to do on the date. When the customer arrived, Destiny walked with him and Minor Female 2 up to room #205 and showed her where the condoms were. Destiny collected $100 from the customer and then left the room. Minor Female 2 told the customer she would not have sex with him but would give him oral sex. The male agreed and asked her to put a condom on his penis, which Minor Female 2 did.

While engage in oral sex with the customer, either Thompson or Destiny called the phone in the room asking if they were finished yet. Minor Female 2 stated she was not done but wished that she was. A short time later, Minor Female 1 knocked on the door and came in. The customer became upset that Minor Female 2 did not "finish" performing oral sex and an argument ensued. The customer eventually left and threatened to call the Police. It was a short time later that the Police, who had in fact been notified, arrived and identified the juveniles. Spence, Thompson and Destiny had fled the area in the rental car, abandoning the minors and returning to New Jersey.

The police determined that Minor Female 2 was a juvenile who had been reported as a missing from New Jersey. Pursuant to a search and seizure warrant, the police recovered used condoms from the trash can in Room 205. During the search of the hotel rooms, a Wells Fargo Bank account application was located in the name of Ruqayyah Thompson. A review of records revealed that Thompson had been previously arrested by Baltimore County Police for Prostitution on July 29, 2015, at which time she provided an address of 272 Williamson, Hillside, NJ. Kenyon Spence was also arrested and charged with Thompson. Spence knew or suspected that both Minor Females 1 and 2 were under the age of 18.

2

Rev. May 2018

The investigation revealed that Thompson had rented the hotel rooms in the name of A.S. a woman who resided in Connecticut, and in whose name Thompson had obtained a Connecticut driver's license. Thompson and Spence had a history of renting rooms at this same Ramada Inn for the purposes of engaging in prostitution activity. Although Thompson was the person who engaged with the Ramada Inn reservations to actually rent the rooms, she received cash from Spence in order to pay for them.

On October 31, 2017, a clerk at the Ramada Inn received a telephone call from telephone number 201-575-1020. The male caller identified himself as "Laquan" and was asking to pick up his belongings from room #205 that had been left there a few days earlier. The male caller was told he would need to speak to the hotel manager because only the female who rented the room would be permitted to pick up the items. On November 2, 2017, the hotel received another call from a male who identified himself as Jaquan Cooper (phonetic) who sounded similar to the previous caller. This male also wanted to pick up the belongings left in room #205.

SO STIPULATED:

P. Michael Cunningham
Assistant United States Attorney

Kenyon Laquan Spence
Defendant

Shari Derrow, Esq.
Counsel for Defendant

3

Rev. May 2018